UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-CV-20130-SEITZ
         (99-CR-260-SEITZ)
MAGISTRATE JUDGE P. A. WHITE

MANUEL MANNY MARTEL,          :

        Movant,              :          <u>REPORT OF</u>
                                        <u>MAGISTRATE JUDGE</u>
v.                           :

UNITED STATES OF AMERICA,    :

        Respondent.          :
_____

## I.  Introduction

This matter is before the Court on the Movant's *pro se* motion to vacate pursuant to 28 U.S.C. § 2255, attacking his guilty plea and sentence in criminal case number 99-CR-260-SEITZ.

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B),(C); S.D.Fla. Local Rule 1(f) governing Magistrate Judges; S.D. Fla. Admin. Order 2003-19; and Rules 8 and 10 Governing Section 2255 Cases in the United States District Courts.

Before the Court for review are the motion to vacate (Cv-DE# 1), the Government's Response and appendix of exhibits (Cv-DE# 7, 8), the Movant's Reply (Cv-DE# 14), the Presentence Investigation Report ("PSI"), and all pertinent portions of the underlying criminal file.

## II. Claims

Construing the *pro se* Movant's arguments liberally, he appears to raise the following claims in his Section 2255 motion

1

(renumbered):

1.  The Movant's plea was unknowing and involuntary
    because he was unaware that he would not receive
    credit for the thirty-eight months he was detained
    in Spain prior to his extradition;

2.  Counsel was ineffective for failing to ensure he
    received credit for the 38 months he served in
    Spain prior to his extradition; and

3.  Counsel was ineffective for failing to inform the
    Movant that, if he did not file a direct appeal, he
    would waive his ability to challenge the sentencing
    error.

### III. Procedural History

The relevant procedural history of the underlying criminal
case is as follows. The Movant was indicted on April 16, 1999,
with: Count (1), possession with intent to distribute a detectable
amount of cocaine; Count (2), possession with intent to distribute
five or more kilograms of cocaine; and Count (3), possession of a
firearm in furtherance of a drug trafficking crime. (Cr-DE# 13).
The Movant was placed under pretrial release supervision but he
absconded on May 14, 1999. See (Cr-DE# 21). The Court revoked bond,
placed the case in fugitive status, and issued an arrest warrant.
(Cr-DE# 24, 25, 26).

The Movant was arrested on August 4, 2014, in Spain, and was
extradited to the United States on August 8, 2014. See (Cr-DE# 28).
On November 7, 2014, he pled guilty to Count (2) in exchange for
the Government's dismissal of Counts (1) and (3). (Cr-DE# 46). He
agreed in a written plea agreement that the sentenced had not yet
been imposed and that the mandatory minimum sentence is ten years'
imprisonment with a statutory maximum of life. (Cr-DE# 46 at 2-3).
The Government agreed to recommend a three-level reduction for
acceptance of responsibility, if applicable. (Cr-DE# 46 at 3). The

2

parties jointly agreed to recommend findings that: the quantity of controlled substance for which the Movant is accountable is at least five kilograms but less than fifteen kilograms; a two-level increase applies because the Movant possessed a firearm in connection with the drug offense; the Movant obstructed justice by fleeing. (Cr-DE# 46 at 4). The United States agreed not opposed the Movant's request for a downward variance to the statutory minimum mandatory sentence 120 months' imprisonment. (Cr-DE# 46 at 4). Further, pursuant to 18 U.S.C. § 3585, the Government agreed "not oppose the defendant's request that he receive credit for the time he was held in custody while awaiting extradition." (Cr-DE# 46 at 4). The Movant acknowledged that the parties' sentencing recommendation is not binding on the Court. (Cr-DE# 46 at 4). The agreement contains an appellate waiver providing that the Movant will not appeal any sentence imposed unless it exceeds the maximum permitted by statute or is the result of an upward departure from the guidelines range. (Cr-DE# 46 at 5). The plea agreement is supported by a written factual proffer that provides the Government would be able to prove the following beyond a reasonable doubt:

> In September 1998, a Confidential Informant ("CI") advised DEA agents that the defendant had been selling cocaine since 1996. In December 1998, at the direction of law enforcement, the CI traveled to the defendant's residence and **purchased approximately 250 grams of cocaine and 3.5 grams of cocaine base** for $4,500. In March 1999, the CI again traveled to the residence of the defendant and **purchased approximately 500 grams of cocaine from the defendant.** A search warrant was subsequently obtained for the defendant's residence.
>
> A search of the defendant's residence revealed an **additional six and a half (6.5) kilograms of cocaine.** Approximately $120,000 was seized from the residence. Also found in the residence, within arm's length was **approximately three (3) kilograms of cocaine,** additional cash and a **firearm.** Two safety deposit keys were also discovered in the residence. Search warrants were obtained for the

safe deposit boxes. An additional $260,000 was obtained from the two safe deposit boxes for a total of $389,472.

(Cr-DE# 47) (emphasis added).

The change of plea hearing came before the Court on November 7, 2014, at which the Movant was represented by retained counsel. (Cr-DE# 56). The Movant stated under oath that he had a satisfactory ability to communicate with counsel through an interpreter. (Cr-DE# 56 at 7-8). He fully discussed his case, the evidence, possible defenses, his options, and the consequences of his plea with counsel, and counsel answered all his questions to his satisfaction. (Cr-DE# 56 at 9-12). He discussed the guidelines with counsel and understood that the Court had not yet determined his sentence, which could be higher than the guidelines or counsel's estimate. (Cr-DE# 56 at 13-15). The Movant went over the factual proffer with counsel via an interpreter and discussed it with counsel before signing it. (Cr-DE# 56 at 15-16). The factual proffer, which was translated for the Movant, accurately describes what the Movant did. He had no changes, corrections, or additions. (Cr-DE# 56 at 2, 16). The Movant signed the plea agreement after counsel had the whole document translated into Spanish. (Cr-DE# 56 at 18). Counsel discussed each of the plea agreement's fourteen paragraphs with counsel so he could understand what it meant and the impact on him. (Cr-DE# 56 at 18). Counsel explained everything "in detail" and answered all the Movant's questions. (Cr-DE# 56 at 18).

The Movant agreed that he understood everything up to that point then asked to confer with counsel. They came back on the record and counsel explained that the Movant wanted credit for the time he served in Spain on a Spanish drug conviction which counsel had told him is legally unavailable:

MR. GUARLNICK: ... **My client was arrested in Spain for a crime that he committed in Spain. He served the sentence there.**

THE COURT: Okay.

MR. GUARLNICK: **Then there was a period of time, it was a week or a couple of days before they extradited him to the United States.**

THE COURT: Okay.

MR. GUARLNICK: **I believe that the client feels that he should get credit for the time served for the term that he served for the crime that he committed in Spain. I have told him that that is not correct.**

THE COURT: If you did the time for the crime in Spain, you are back here to face up to the crime that you did here. Two different crimes. Two different punishments. You don't get a two-for that for two different crimes you only have to have a punishment for one. It doesn't work that way.

MR. GUARLNICK: I have explained to him that the Spanish Court has no jurisdiction to tell this Court what to do. He is a United States citizen and he must pay the penalty for the crime in the United States, and Spain has no authority whatsoever to interfere with this Court or that issue.
...
THE COURT: When were you arrested in Spain?

THE DEFENDANT: **I was arrested in Spain because of the charges that the United Sates had launched against** me. December, 2011 I was arrested because I was wanted by the United States. When I was arrested on June 7, 2011 for the crime I committed in the United States, **they found that I had cocaine on my person.**

THE COURT: So you also had cocaine on your person in Spain?

THE DEFENDANT: **When I was arrested, I had cocaine on me at the time.**

THE COURT: Okay. Well, **that's a separate crime.** Spain

doesn't like to have people possessing cocaine any more than the United States does. Okay?

THE DEFENDANT: Okay.

THE COURT: You are very lucky if your sentence was only three years here.

How much cocaine did you have when you were arrested in Spain?

THE DEFENDANT: It was a little bit. It was a small amount. It was a matter of grams.

THE COURT: So we are not talking kilograms.

MR. GUARLNICK: As I understand it, Your Honor, for the Court's further information, **I believe that he served three years in Spain for that charge.**

(Cr-DE# 56 at 19-21) (emphasis added).

The Court then asked the Movant whether he understood that he would not receive credit on the present federal charge for the three years he had served in Spain for his Spanish cocaine possession charge:

THE COURT: ... Have you had a chance – do you understand that what Mr. Guarlnick is telling you is accurate?

THE DEFENDANT: I have never maintained anything different. He has always explained this to me. He has always told me this, but he has always explained what he has a just said to you, to me. He has explained it to me.

THE COURT: Unfortunately, that is the reality. He is helping you deal with not a dream, but the reality. It's important that you know what the real facts are, what the reality is so that you can make an informed decision.

THE DEFENDANT: Well, that was the doubt that I had. That was a doubt.

THE COURT: **Have we cleared up your doubt?**

THE DEFENDANT: **Yes**, because I saw a document in the computer. There was a motion that I saw in the computer and I based myself on that.

THE COURT: Mr. Martel, **you are very lucky in that the Government did not file another charge against you, which they could have. They could have filed a bond jumping charge because you didn't show up.** That would have had additional ramifications because you would have had another criminal history point.

Instead, what you and the Government agreed is that there is a two-level adjustment for the fact that you jumped bond and then fled the jurisdiction. So Mr. Guarlnick has negotiated a good result for you. He has gotten a good benefit for you.

This is the deal and you can take it or you can go to trial.

THE DEFENDANT: Yes, that's correct. What you are saying is absolutely right. He has informed me and he has explained everything to me detail by detail. He explained to me earlier exactly what you have said the decision that the Government took in not pressing another charge against me. I had this doubt and I just wanted to clear it up.

THE COURT: Okay. So, hopefully, **now do you feel that it's cleared up?**

THE DEFENDANT: **Yes, yes.**

(Cr-DE# 56 at 22-23) (emphasis added).


The Court then explained that the Government agreed as part of the plea agreement not to oppose the Movant's request credit for the five days between the end of his Spanish sentence and his extradition to the United States:


THE COURT: And the parties have also agreed the Government will not oppose your request that you receive credit for the time that you were held in custody while waiting extradition. How much time is that, Mr.

Guarlnick?

MR. GUARLNICK: That's about five days, Judge. That's what I have been told, Judge, about five days.
...
THE COURT: He was arrested and just held until he was put on the plane and sent here?

MR. GUARLNICK: He finished his sentence in Spain and it was approximately five days before they extradited him.

THE COURT: He gets credit for that, yes, he does....

(Cr-DE# 56 at 26-27).

The Movant stated that he had not been made any promises and was not threatened with regards to the plea. (Cr-DE# 56 at 27). He was satisfied with the legal advice and representation counsel had given him and there was nothing he would have liked for counsel to have done differently. (Cr-DE# 56 at 27-28). He confirmed that he understood the rights he was giving up by pleading guilty. (Cr-DE# 56 at 28-30). He specifically acknowledged that his sentencing exposure is a minimum mandatory of ten years' imprisonment, up to life, and that his plea could not be withdrawn because of his sentence. (Cr-DE# 56 at 30-33).

The Court then explained his appellate rights and the ramifications of the plea agreement's appellate waiver:

THE COURT: Are you aware that, under certain circumstances, the Government may have the right to appeal any sentence that I impose?

THE DEFENDANT: The Government?

THE COURT: Or you. You and the Government have a right to appeal the sentence that I impose.

Are you aware of that?

8

THE DEFENDANT: You mean I have the right to appeal whatever sentence you impose?

THE COURT: Yes, you do. But in paragraph 12 of your plea agreement, you have given up that right.

THE DEFENDANT: Okay. Yes. My attorney explained that to me too.

THE COURT: Let me talk to you about that.

Do you understand that the right to appeal a sentence is a very important right because, although I try to do my best, all [] judges are human beings, and all human beings make mistakes, and I could make a mistake in the calculation of the guidelines. As long as I do not impose a sentence greater than the law allows, which is life imprisonment, and I do not depart upward from the guideline range that I established, your agreement says that you are going to say okay, Judge, that's my sentence. Thank you very much.

Do you understand that is what this agreement said?

THE DEFENDANT: I understand.

THE COURT: Have you had a chance to talk to Mr. Guarlnick about the pros and the cons of waiving your right to appeal your sentence?

THE DEFENDANT: Yes.

THE COURT: Mr. Guarlnick is very experienced criminal defense lawyer. He has had many years of education and I know that he has given you all of his many years of education and his many years of experience, but it's your life. He can tell you what your options are, but you are the one that has to make the decision because it is your life. So I need to know is your decision to waive your right to appeal a decision that you are making freely and voluntarily?

THE DEFENDANT: Yes, it's freely and voluntarily. Yes, it's my decision.

THE COURT: Then the Court finds that the Defendant has told me under oath that he is waiving his right to appeal the sentence....

(Cr-DE# 56 at 33-35).

The Movant explained that he is pleading guilty freely and voluntarily because he is guilty and because "according to what I was seen, according to what has been explained to me, I think that I would come out better that way." (Cr-DE# 56 at 35-36).

The PSI calculated the base offense level as thirty because the case involves the possession with intent to distribute the equivalent of at least 1,000 kilograms but less than 3,000 kilograms of marijuana. (PSI ¶ 17). Two levels were added for possession of a dangerous weapon or firearm. (PSI ¶ 18). Two levels were added for obstruction of justice. (PSI ¶ 21). No adjustment was made for acceptance of responsibility. (PSI ¶ 24).

The Movant had zero criminal history points and a criminal history category of I. (PSI ¶ 30). However, the "other arrests" section states that "[a]ccording to the government, the defendant was **arrested in Spain on June 8, 2011, on unrelated conduct.** While in custody a warrant for the instant case was executed on August 4, 2014, and he was extradited to the United States on August 8, 2014." (PSI ¶ 36). The "personal and family data" section notes that, "from June 8, 2011 to August 7, 2014, the defendant was incarcerated in Spain. On August 8, 2014, he was extradited to the United States for criminal prosecution...." (PSI ¶ 45). He had lived in Madrid since 2005, and was arrested there in 2011. (PSI ¶ 46)

The resulting Guidelines range is: between 151 and 188 months' imprisonment (PSI ¶ 63); at least five years of supervised release (PSI ¶ 65); and fines between $17,500 and $4,000,000 (PSI ¶ 69).

The PSI notes that the parties agreed in the plea agreement to acceptance of responsibility, however, he does not qualify for that adjustment because he willfully failed to comply with the conditions of release by fleeing the jurisdiction to avoid prosecution. (PSI ¶ 72).

At the sentencing hearing on January 20, 2015, counsel stated that he had the PSI translated for the Movant and discussed it with him. (Cr-DE# 55 at 3). The only correction that counsel noted was "the number of days that he should receive credit for while he was waiting to be extradited and that has been corrected." (Cr-DE# 55 at 3-4). The Court sentenced the Movant to the minimum mandatory sentence of 120 months' imprisonment, stating that it was appropriate "particularly given the fact that Mr. Martel has accepted responsibility from the day that he was arrested in Spain and indicated he wanted to return to the United States and face his responsibility.... the nature of the offense, ... similarly situated defendants and particularly ones that are of his age [a]nd taking into consideration also that he was just a criminal history category of one." (Cr-DE# 55 at 20).

After sentence was imposed the Court asked the Movant whether he or his counsel "object[ed] to the court's findings of fact or the manner in which sentence was pronounced," and the Movant stated "No." (Cr-DE# 55 at 24). The Court then advised him of his right to file an appeal within fourteen days after the entry of the judgment, and that he could seek to proceed *in forma pauperis* if he could not afford an appeal. Id.

The Court docketed the judgment on January 22, 2015, sentencing the Movant to 120 months' imprisonment followed by five years of supervised release with "credit for time served prior to

11

absconding and becoming a fugitive on May 14, 1999, and from the date the warrant was executed on August 4, 2014." (Cr-DE# 53 at 2).

The Movant filed the instant Section 2255 motion to vacate on January 2, 2106. (Cv-DE# 1).

## IV. Limitations & Procedural Default

The Government concedes that the instant motion to vacate was timely filed and does not argue that any procedural default applies. (Cv-DE# 7 at 5).

## V. Standard of Review

Section 2255 authorizes a prisoner to move a sentencing court to vacate, set aside, or correct a sentence where "the sentence was imposed in violation of the Constitution or laws of the United States, or ... the court was without jurisdiction to impose such sentence, or ... the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); see Hill v. United States, 368 U.S. 424, 426-27 (1962). A sentence is otherwise subject to collateral attack if there is an error constituting a "fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979); Hill, 368 U.S. at 428.

A defendant who pleads guilty "waives all non-jurisdictional challenges to the constitutionality of the conviction" and may only attack the knowing and voluntary nature of the plea. See Wilson v. United States, 962 F.2d 996 (11th Cir. 1992). To enter into a voluntary plea, the defendant must understand the law in relation to the facts. McCarthy v. United States, 394 U.S. 459 (1969). The court taking the plea must address the defendant personally in open

court before accepting the plea "and determine the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(1). The court must specifically address three "core principals" ensuring that a defendant "(1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012 (11th Cir. 2005). To ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting the plea, including the right to plead not guilty and be represented by counsel. See id.; Fed. R. Crim. P. 11(b)(1). The defendant's declarations in open court during the plea colloquy carry "a strong presumption of verity" and cannot be overcome by conclusory or unsupported allegations. Blackledge v. Allison, 431 U.S. 63, 74 (1977); United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994).

The waiver extends to claims alleging ineffective assistance of counsel that do not implicate the validity of the plea itself. See Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983) ("Smith's guilty plea was voluntarily and knowingly made, [t]hus] he cannot now attack the ineffectiveness of his counsel in any respects other than as the alleged ineffectiveness bears upon counsel's faulty advice that coerced a guilty plea."); see also United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant, including claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered guilty plea involuntary); United States v. Bohn, 956 F.2d 208, 209 (9th Cir. 1992) (holding that pre-plea ineffective assistance of counsel claims are also waived by guilty plea).

13

As a general matter, to prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(en banc). Vague, conclusory, speculative and unsupported claims cannot support relief for ineffective assistance of counsel. Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991).

The Sixth Amendment right to counsel includes effective representation during the plea negotiation process. Padilla v. Kentucky, 559 U.S. 356 (2010); see generally Strickland, 466 U.S. at 668. However, a defendant has no right to be offered a plea, nor is there any federal right for a judge to accept it. Missouri v. Frye, 566 U.S. 133, 148 (2012). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, 566 U.S. at 153. When defense counsel allows an offer to expire without advising the defendant or allowing him to consider it, counsel has provided ineffective assistance. Id. "[A] critical obligation of counsel [is" to advise the client of 'the advantages and disadvantages of a plea agreement.'" Padilla, 449 U.S. at 370 (quoting Libretti v. United States, 516 U.S. 29, 50-51 (1995)).

To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or has been rejected because of counsel's deficient advice, defendants must demonstrate:

a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it.... [and] a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

Id. at 1409; see Lafler v. Cooper, 566 U.S. 156, 164 (2012) (same).

Strickland's inquiry into whether the result of the proceeding would have been different "requires looking not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plead pursuant to the terms earlier proposed." Frye, 566 U.S. at 148.

Counsel's failure to file a direct appeal after being requested to do so is a per se constitutional violation of the Sixth Amendment right to counsel. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) ("we have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable"); Stanton v. United States, 397 Fed. Appx. 548 (11th Cir. 2010)(quoting Flores-Ortega, 528 U.S. at 470). There is a presumption of prejudice "with no further showing from the defendant of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." Flores-Ortega, 528 U.S. at 484. A defendant need only show that his counsel's constitutionally deficient performance deprived him of an appeal he would have otherwise taken, i.e., the defendant expressed to his attorney a desire to appeal. Id.; see McElroy v. United States, 259 Fed. Appx. 262 (11th Cir. 2007); Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005).

This holds true whether the defendant pled guilty or was convicted after jury trial. Martin v. United States, 81 F.3d 1083 (11th Cir. 1996); Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995); Restrepo v. Kelly, 178 F.3d 634, 641-42 (2d Cir. 1999)(habeas petitioner need not demonstrate that his defaulted appeal would have succeeded in order to establish prejudice sufficient for habeas relief). Appellate counsel must both perfect an appeal and file a brief to perform effectively as an advocate. Cannon v. Berry, 727 F.2d 1020 (11th Cir. 1984); Mylar v. Alabama, 671 F.2d 1299 (11th Cir. 1982); Perez v. Wainwright, 640 F.2d 596 (5th Cir. 1981). The failure to file an appeal despite the defendant's timely request constitutes ineffective assistance *per se*, so no showing of actual prejudice is necessary. Cannon, 727 F.2d at 1020.

"[W]here a defendant has not specifically instructed his attorney to file an appeal, we must still determine 'whether counsel in fact consulted with the defendant about an appeal.'" Thompson v. United States, 504 F.3d 1203 (11th Cir. 2007)(quoting Flores-Ortega, 528 U.S. at 478). Counsel has a constitutional duty to consult with the defendant about an appeal when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480. Relevant factors include: whether the conviction follows a guilty plea, whether the defendant received the sentence he bargained for, and "whether the plea [agreement] expressly ... waived some or all appeal rights." See Otero v. United States, 499 F.3d 1267, 1270 (11th Cir. 2007) (quoting Flores-Ortega, 528 U.S. at 480). Adequate consultation requires: "(1) informing a client about his right to appeal, (2) advising the client about the

16

advantages and disadvantages of taking an appeal, and (3) making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal." Thompson v. United States, 504 F.3d 1203, 1206 (11th Cir. 2007)(citing Frazer v. South Carolina, 430 F.3d 696, 711 (4th Cir. 2005)); Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005). A defendant should be provided enough information to intelligently and knowingly assert or waive his right to an appeal. Thompson, 504 F.3d at 1206. If two of the three elements of adequate consultation are not satisfied, then it is apparent that counsel failed to consult with the movant regarding his appellate rights. Flores-Ortega, 528 U.S. at 478.

## VI. Discussion

(1)   Involuntary Plea

The Movant contends that his plea was unknowing and involuntary because he was unaware that he would not receive credit for the thirty-eight months he was detained in Spain prior to his extradition to the United States in the underlying criminal case. At the time of the plea and throughout the proceedings, he thought he would receive credit for the time he spent in Spain awaiting extradition. Receiving that credit was material to his decision to plead guilty. Counsel's failure to ensure that the Movant understood the consequences of his guilty plea resulted in deficient performance that rendered the plea involuntary. He would not have pled guilty had he know he would not receive credit.

To enter a voluntary plea, the defendant must understand the law in relation to the facts. McCarthy v. United States, 394 U.S. 459 (1969). The court taking the plea must address the defendant personally in open court before accepting the plea "and determine the plea is voluntary and did not result from force, threats, or

promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(1). The court must specifically address three "core principals" ensuring that a defendant "(1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." <u>United States v. Moriarty</u>, 429 F.3d 1012 (11th Cir. 2005). To ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting the plea, including the right to plead not guilty and be represented by counsel. See <u>id.</u>; Fed. R. Crim. P. 11(b)(1). The defendant's declarations in open court during the plea colloquy carry "a strong presumption of verity" and cannot be overcome by conclusory or unsupported allegations. <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977); <u>United States v. Medlock</u>, 12 F.3d 185, 187 (11th Cir. 1994).

The record reveals that the Movant entered his plea knowingly and voluntarily. He admitted during the plea hearing that he was pleading guilty voluntarily without any promises or threats. He understood the charges, discussed the case with counsel, and was pleading guilty because he is guilty and thought it was in his best interest to do so. He understood the consequences of the plea including the rights he was waiving, minimum mandatory sentence, and maximum sentencing exposure.

The specific claim that he thought he would be receiving credit for all the time he served in Spanish prison, is conclusively refuted by the record. Counsel told the Court at the plea hearing that the Movant wanted credit for the time he served in Spanish prison on his Spanish conviction, and that he had advised the Movant that there is no legal basis for such credit. (Cr-DE# 56 at 19-21). This advice did not constitute ineffective

assistance of counsel for the reasons set forth in Claim (2), *infra*. The Court agreed with counsel's legal conclusion and discussed the matter with the Movant at length until the Movant stated, under oath, that his concerns with regards to credit for time served had been clarified. (Cr-DE# 56 at 22-23). He entered his guilty plea after indicating to the Court that he understood and accepted that such credit was not legally available. (Cr-DE# 56 at 22-23, 35-36). His statements in open court and are entitled to a presumption of verity and his present self-serving statements to the contrary should be rejected. Blackledge, 431 U.S. at 74.

The record conclusively refutes the Movant's claim that his guilty plea was not knowingly and voluntarily entered, and it should be denied.

(2)  Ineffective Assistance: Credit for Time Served

The Movant contends that counsel was ineffective for failing to ensure that, as part of his plea agreement, he received credit for the thirty-eight months he served in Spanish prison prior to his extradition to the United States. He was detained in Spain on charges unrelated to the underlying criminal case, but he was only held because of United States' extradition warrant. If the United States had not interceded, he would have been at liberty in Spain. Counsel's failure to ensure the plea agreement included these facts resulted in an inaccurate sentencing calculation. If the Movant had known he would not receive credit for the time he served in Spanish prison, he would have insisted on developing a factual record that he would not have been held in Spain for more than forty months based on the United States charges. At a minimum, counsel prevented the Movant from developing a factual record which could have been reviewed on appeal.

Section 3585(b) of United States Code Title 18 provides for calculating the term of imprisonment as follows:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
> > (1) as a result of the offense for which the sentence was imposed
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585(b).

A sentence "commences" "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). "Authority to calculate credit for time served under section 3585(b) is vested in the Attorney General, not the sentencing court." United States v. Alexander, 609 F.3d 1250, 1259 (11th Cir. 2010). The Attorney General has delegated the authority to make the determination regarding credit time served to the Bureau of Prisons which, in turn, has established regulations governing formal review of inmate complaints relating to any aspect of imprisonment. See 28 C.F.R. §§ 542.10-16 (1989); United States v. Wilson, 503 U.S. 329, 335 (1992) (after sentencing, "the Attorney General, through the BOP, has the responsibility for administering the sentence," and credit for time served is administered by the Attorney General through the BOP). These regulations set out the administrative procedures that prisoners must pursue prior to seeking relief in the district courts. The Eleventh Circuit has held that these

20

administrative remedies are jurisdictional. United States v. Lucas, 898 F.2d 1554, 1556 (11th Cir. 1990). After a prisoner exhausts his administrative remedies, he can seek credit for time served in the district courts by filing a Section 2241 habeas petition in the jurisdiction where he is incarcerated against the warden of his prison. See United States v. Dawson, 545 Fed. Appx. 539 (7th Cir. 2013); United States v. Berrio, 428 Fed. Appx. 944, 944 (11th Cir. 2011).

As a preliminary matter, this claim is refuted by the record insofar as the plea agreement does address credit for time served. It provides that the Government will not oppose the Movant's request for credit for the time he was held in Spanish custody while awaiting extradition pursuant to 18 U.S.C. § 3585. (Cr-DE# 46 at 4).

Counsel was not ineffective for failing to include credit of the time he served on his Spanish sentence because there is no legal basis for such a request. The Movant was convicted and sentenced in Spain for cocaine possession. The Spanish sentence was for a separate Spanish offense, and therefore, the Movant cannot also receive credit for that time towards his federal sentence. See 18 U.S.C. § 3585(b). Counsel cannot be deemed ineffective for failing to include in the plea agreement a legally meritless credit time served provision. See Knowles v. Mirzayance, 556 U.S. 111 (2009)(defense counsel not required to pursue every claim or defense, regardless of its merit, viability or realistic chance for success); Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious issue).

Further, nothing that counsel did or failed to do with regards

to the Spanish credit for time issue could have prejudiced him
because the Court lacked the authority to award such credit. See,
e.g., United Stats v. Nyhuis, 211 F.3d 1340 (11th Cir. 2000) (claim
of ineffective assistance failed because a claim for credit time
served is an administrative, not a judicial function, and therefore
he had not shown that counsel's performance was deficient or that
the outcome of the proceedings would have been different but for
counsel's alleged deficiency); Hernandez v. United States, 524 Fed.
Appx. 865 (11th Cir. 2013) (defendant was not prejudiced by
counsel's failure to object to the court's alleged miscalculation
of credit for time he served while awaiting extradition from
Colombia where the authority to calculate the credit was vested in
the Attorney General and administered by the BOP); Castillo v.
Graver, 182 Fed. Appx. 871, 873 (11th Cir. 2006) (district court
had no authority to bind BOP in stating that the defendant "shall
receive credit for time served since the case began" because
district courts are not authorized to compute a presentence credit
at sentencing).

     The Movant's claim that counsel's failure to preserve the
issue for appellate review prejudiced him likewise fails because
"[a] claim concerning credit for time served is not appropriate on
direct appeal, and should be filed as a writ of habeas corpus
pursuant to 28 U.S.C. § 2241, against the BOP." Berrio, 428 Fed.
Appx. at 944 (declining to consider on direct appeal the claim of
a defendant, who was arrested in Brazil for an unrelated offense,
arguing that he should be given credit for the time he served in
prison in Brazil between the date he was served a provisional
United States arrest warrant and the date his United States
sentence commenced); see Knowles, 556 U.S. at 111; Chandler, 240
F.3d at 917.

The Movant has failed to demonstrate that counsel performed deficiently or that he was prejudiced. Therefore, this claim should be denied.

(3)   Ineffective Assistance: Notice of Appeal

Finally, the Movant contends that counsel was ineffective for failing to inform him that, if he did not file a direct appeal, he would waive his ability to challenge the sentencing error. He claims that he was dissatisfied with the 120-month sentence he received, but believed that credit for prior custody and anticipated changes in federal controlled substance law would mitigate the harshness of the punishment. Counsel did not tell the Movant that, if he failed to appeal the sentence and future events were not favorable, then his right to challenge the sentence would be abandoned. (Cv-DE# 1 at 8). Had he known this, he would have appealed.

The Movant does not allege that he requested that counsel file a notice of appeal. Nor has he pled any facts showing that he reasonably demonstrated to counsel that he was interested in appealing.[1] See Machibroda v. United States, 368 U.S. 487 (1962) (claim that is bereft of any factual support is subject to summary dismissal).

Ineffective assistance, therefore, could only be premised on counsel's failure to consult with the Movant about appealing if

---

[1] The law is clear that any argument at this juncture that he did in fact request a direct appeal, which argument has not previously been made by the Movant before the undersigned, cannot be raised for the first time in objections to this Report. See Starks v. United States, 2010 WL 4192875 at *3 (S.D. Fla. 2010); United States v. Cadieux, 324 F.Supp. 2d 168 (D.Me. 2004). "Parties must take before the magistrate, 'not only their best shot but all of the shots.'" Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987)(quoting Singh v. Superintending Sch. Comm., 593 F.Supp. 1315, 1318 (D.Me. 1984)).

there was reason to think that a rational defendant would want to appeal. The record reveals that no rational defendant would have wanted to appeal in the Movant's circumstances. He was charged with three counts that carried potential prison sentences of twenty years, life, and a five-years (consecutive). (Cr-DE# 13). The Movant pled guilty to one of the three counts and the others were dismissed. In addition to these three counts, the Government could have additionally charged him with absconding, but instead, he was only assessed two offense levels for obstructing justice. He received a 120-month sentence in accordance with the plea agreement that was below the advisory guidelines and is the minimum sentence permitted by statute. His plea contained a waiver of his appellate rights unless the sentence exceeded the statutory maximum or was an upward departure, neither of which came to pass. Further, there are no non-frivolous grounds for appeal. The claim regarding credit for time served on his Spanish sentence is legally incorrect for the reasons set forth in Claim (2), *supra*, and he has failed to allege any factual or legal basis for presenting on direct appeal any "anticipated changes in federal controlled substance law...." (Cv-DE# 1 at 8).

Counsel did not have a constitutional duty to consult with the Movant about appealing under these circumstances. See, e.g., Flores-Ortega, 528 U.S. at 479 (under hypothetical circumstances where "a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes there are no nonfrivolous grounds for appeal ...[,] it would be difficult to say that counsel is 'professionally

unreasonable'" for failing to consult with a defendant about an appeal) (quoting Strickland, 466 U.S. at 691).

Therefore, counsel was not ineffective for failing to file a notice of appeal or consult with the Movant about appealing, and this claim should be denied.

## VII. Evidentiary Hearing

Bare and conclusory allegations of ineffective assistance which contradict the record and are unsupported by affidavits or other evidence do not require a hearing. Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006) (no hearing warranted in the absence of any specific factual proffer or evidentiary support); Peoples v. Campbell, 377 F.3d 1208 (11th Cir. 2004) (hearing is not required for frivolous claims, conclusory allegations unsupported by specifics, or contentions wholly unsupported by the record).

The Movant's claims are conclusively refuted by the record and/or facially insufficient to support relief. Accordingly, no evidentiary hearing is warranted. See Hill, 474 U.S. at 60.

## VIII. Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2255, Rule 11(a). A timely notice of appeal must be filed even if the court issues a certificate of appealability. 28 U.S.C. § 2255, Rule 11(b).

After review of the record, the undersigned finds no substantial showing of the denial of a constitutional right as to Movant's claims. <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (habeas petitioner must demonstrate reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues were adequate to deserve encouragement to proceed further). Therefore, it is recommended that the Court deny a certificate of appealability in its final order. If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the District Judge in objections to this report.

### IX. Conclusion

Based on the foregoing, it is recommended that the motion to vacate be denied, a certificate of appealability not be issued, and this case be closed.

Objections to this report, including any objection with regards to the recommendation regarding the certificate of appealability, may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this <u>27</u><sup>th</sup> day of February, 2017.

_____

UNITED STATES MAGISTRATE JUDGE

cc:  Manuel Manny Martel
     59306-004
     Coleman Low
     Federal Correctional Institution
     Inmate Mail/Parcels
     Post Office Box 1031

```
Coleman, FL 33521
PRO SE

Yvonne Rodriguez-Schack
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132
```